IN THE DISTRICT COURT OF THE UNITED STATES FOR THE

MIDDLE DISTRICT OF ALABAMA, NORTHERN DIVISION

| | | |
|---|---|---|
| ALFRED F. SCHULTZ, | ) | |
| | ) | |
|     Plaintiff, | ) | |
| | ) | |
|     v. | ) | CIVIL ACTION NO. |
| | ) | 2:11cv233-MHT |
| CITY OF BRUNDIDGE, ARTHUR | ) | (WO) |
| LEE GRIFFIN, and RONALD | ) | |
| YOHN, | ) | |
| | ) | |
|     Defendants. | ) | |

OPINION AND ORDER

Plaintiff Alfred F. Schultz asserts seizure and
assault claims under the Fourth Amendment (based on the
Fourteenth Amendment and enforced through 42 U.S.C.
§ 1983) against the following defendants: the City of
Brundidge, Alabama; City Councillor Arthur Lee Griffin;
and Officer Ronald Yohn.  The jurisdiction of the court
is invoked pursuant to 28 U.S.C. § 1331.   The case is
currently before the court on separate motions to dismiss
filed by the city and Yohn.  For the reasons that follow,
both motions will be granted in part and denied in part.

## I.   MOTION-TO-DISMISS STANDARD

In considering a motion to dismiss a complaint, the court accepts the plaintiff's factual allegations as true, Hishon v. King & Spalding, 467 U.S. 69, 73 (1984), and construes the complaint in his favor, Duke v. Cleland, 5 F.3d 1399, 1402 (11th Cir. 1993). To survive, the complaint need contain only "enough facts to state a claim to relief that is plausible on its face"; it need not make "detailed factual allegations," Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555, 570 (2007).

## II.   BACKGROUND

According to Schultz's complaint, he was driving in heavy rain on Highway 231 in Pike County, Alabama, when he spotted a female pedestrian crossing the street. He stopped his car to give her a ride and, as the two of them departed, a blue truck pulled up and its driver, later identified as City Councillor Griffin, exited the

vehicle with a shotgun in hand.  Schultz drove off and proceeded south on Highway 231.

A few moments later, Schultz was pulled over by a City of Brundidge police cruiser driven by Officer Yohn. Yohn approached Schultz's car with his gun drawn, ordered him out of the vehicle, forced him to the ground, and handcuffed him.  City Councillor Griffin then arrived on the scene, where he trained his shotgun on Schultz and directed Yohn to remove the passenger from Schultz's truck and place her in the police cruiser.  While Yohn carried out that directive, Griffin struck Schultz (who was still in handcuffs) with the butt of his shotgun. The attack was sufficiently severe that Schultz was physically injured, incurred medical expenses, suffered distress, and lost income.

Schultz subsequently brought suit against the City of Brundidge, City Councillor Griffin, and Officer Yohn. His complaint raises five separate claims for relief under the Fourth Amendment.  <u>Claim one</u> is that Yohn and

Griffin conducted an unlawful seizure of Schultz.  <u>Claim two</u> is that Griffin subjected Schultz to excessive force. <u>Claim three</u> is that Yohn failed to prevent Griffin's use of excessive force.  <u>Claim four</u> is that the City of Brundidge has an impermissible policy permitting city councillors to direct law-enforcement officers.  <u>Claim five</u> is that the city failed to train its law-enforcement officers properly regarding how they should interact with city councillors.  Yohn has moved to dismiss counts one and three, while the city has moved to dismiss counts four and five.  Yohn and the city do not challenge count two.

### III.  DISCUSSION

#### A.  Alleged Constitutional Violations

The four claims at issue rely on violations of Schultz's Fourth Amendment rights.  Specifically, Schultz alleges that the City of Brundidge and Officer Yohn conducted an unreasonable seizure during which they used

4

excessive force.  The court will address each claim in turn.

## 1. Unlawful Seizure

The Fourth Amendment protects people from unreasonable searches and seizures.  U.S. Const. amend. IV.  For Fourth Amendment purposes, a seizure occurs when an officer, "by means of physical force or show of authority, has in some way restrained the liberty of a citizen."  <u>Terry v. Ohio</u>, 392 U.S. 1, 19 n.16 (1968).  Forcing a suspect to stop his vehicle and then physically restraining him at gunpoint undoubtedly constitutes a "seizure," <u>see Delaware v. Prouse</u>, 440 U.S. 648, 653 (1979) (driver seized during even brief traffic stop); <u>see also Brendlin v. California</u>, 551 U.S. 249, 255-57 (2007) ("everyone in the vehicle" seized during stop), but the Fourth Amendment is violated only by unreasonable seizures, <u>Terry</u>, 392 U.S. at 9.

"Reasonableness" turns on whether an objective
analysis of the circumstances surrounding the seizure
supports the level of government intrusion. Id. at 20-
21. On the motions to dismiss, those circumstances are
drawn from Schultz's complaint, which, unsurprisingly,
identifies no objective reason for Officer Yohn's pulling
over his vehicle, let alone for ordering him out of the
car, handcuffing him, and holding him at gunpoint.
Indeed, Schultz explains that he "was not in violation of
any traffic laws and was obeying the rules of the road"
at the time he first encountered Yohn and that he obeyed
all of Yohn's instructions and in no way acted
suspiciously. Compl. (Doc. No. 1) at ¶¶ 4-7. In sum,
the record currently before the court reveals absolutely
no justification for Yohn's decision to pull over
Schultz's vehicle, let alone for the subsequent
detention.

Since the Fourth Amendment protects citizens from
being pulled over without justification, United States v.

6

Brignoni-Ponce, 422 U.S. 873, 882 (1975) (noting "that officers must have a reasonable suspicion to justify [such stops]"), and requires some objective reason for police officers to order a person out of his vehicle and detain him in handcuffs, see Terry, 392 U.S. at 20 (requiring that increasingly invasive police actions be "reasonably related in scope to the circumstances which justified the interference in the first place"), the court easily concludes that the seizure at issue in this case, at least for purposes of the motions to dismiss, was unconstitutional.

Both Officer Yohn and the City of Brundidge challenge that conclusion, insisting instead that the complaint fails to allege a constitutional violation because one's imagination might conjure up potential justifications for the seizure not detailed in Schultz's complaint and not foreclosed by the factual allegations that he has made. Specifically, the city argues that the complaint ignores "an obvious likely explanation" for Yohn's behavior:

Schultz "had picked up a passenger who was wanted by the police for some reason."[1]   Brief in Support of Mot. to Dismiss (Doc. No. 10) at 9.   Yohn also submits that possibility, along with the equally unsupported allegations that he had some unidentified reason to conduct an investigatory stop[2] and that he sought to arrest Schultz for a crime committed outside of his presence.[3]

Those arguments appear to rely on a misunderstanding of Ashcroft v. Iqbal, 556 U.S. 662, 129 S.Ct. 1937

---

1.   Later, "some reason" turns into "a serious crime."  Brief in Support of Mot. to Dismiss (Doc. No. 10) at 9.   It is unclear whether the city has more information than it has offered the court about that "reason" or whether it simply forgot its previously asserted justification for the alleged seizure.

2.   The complaint contains no allegations that would justify an investigatory stop, let alone the seizure that allegedly took place, and Yohn does not even attempt to explain why one would have been justified.

3.   The court is unaware of any evidence that Schultz committed a crime prior to the incident detailed in the complaint.

(2009), which the city and Yohn read to encourage district courts to disregard factual assertions made in the complaint in favor of factual guesswork outside the complaint. But <u>Iqbal</u> merely reinforced that this court's obligation to "accept as true all of the allegations contained in a complaint is inapplicable to <u>legal conclusions</u>," <u>id</u>. at 1949 (emphasis added), and encouraged judges to ensure that an "<u>obvious</u> alternative explanation" for the alleged conduct is not lurking behind bare factual assertions, <u>id</u>. at 1951 (emphasis added). It did not override Federal Rule of Civil Procedure 8's "short and plain" standard, nor does it prevent courts from crediting, for the purpose of a motion to dismiss, plausible (even if improbable) allegations supported by factual predicates that, if proven true, would entitle the plaintiff to relief.

Moreover, the very nature of the litigation process directs this court to reject the argument that the existence of an alternative explanation for the

complained-of conduct defeats an otherwise plausible claim at the motion-to-dismiss stage.  Otherwise virtually no constitutional claim would survive, since the human mind's imagination, unlimited by or grounded in evidence, can almost always come up with at least one other plausible explanation for conduct:  for every allegedly unconstitutional seizure the mind can still imagine circumstances to support probable cause, and for every claim of excessive force the mind can still imagine circumstances to support an imminent threat to the officer's safety.  The city and Yohn's argument, if credited, would require a plaintiff to dream up every conceivable justification for a defendant's behavior and then allege in his complaint factual predicates incompatible with those dreamed-up alternatives.  That would not only place an virtually insurmountable burden on a plaintiff who, prior to discovery, may lack evidence of even the defendant's version of the events (let alone all imaginable versions), it would inundate courts with

10

unnecessarily lengthy complaints that go well beyond Rule 8's "short and plain" standard.

## 2.   Excessive Force

The Fourth Amendment's prohibition on unreasonable seizures also protects individuals from being subjected to excessive force during police encounters. <u>Fils v. City of Aventura</u>, 647 F.3d 1272, 1287 (11th Cir. 2011). An officer's use of force violates that constitutional protection if it is "objectively [un]reasonable in light of the facts and circumstances." <u>Graham v. Connor</u>, 490 U.S. 386, 397 (1989) (internal quotation marks omitted).

The Eleventh Circuit Court of Appeals has explained "that unprovoked force against a non-hostile and non-violent suspect who has not disobeyed instructions" is unreasonable and therefore "violates that suspect's rights under the Fourth Amendment." <u>Fils</u>, 647 F.3d at 1289.  Based on that premise, it has found constitutional violations when, for example, a handcuffed and compliant

plaintiff was punched by a police officer, <u>Hadley v.</u> <u>Gutierrez</u>, 526 F.3d 1324, 1330 (11th Cir. 2008), when an officer used a taser against a non-violent suspect, <u>Fils</u>, 647 F.3d at 1290, and when an officer struck a passive suspect with a gun, <u>Walker v. City of Riviera Beach</u>, 212 F. App'x 835, 838 (11th Cir. 2006).

Schultz alleges precisely the kind of violation identified in <u>Hadley</u> and <u>Walker</u>.  According to the complaint, Yohn handcuffed him as he "lay passively on the ground."  Compl. (Doc. No. 1) at ¶ 11.  Griffin then approached and struck him "with the barrel of [a] shotgun."  <u>Id</u>. ¶ 12.  This is materially the same as <u>Hadley</u>, where the defendant officer "punched Hadley in the stomach while he was handcuffed and not struggling or resisting."  526 F.3d at 1330.  There, the court found that the "gratuitous use of force when a criminal suspect is not resisting arrest constitutes excessive force."  <u>Id</u>.  And Schultz's circumstances were also identical to those in <u>Walker</u> where an officer struck a passive suspect

12

with a gun.  <u>Walker</u>, 212 F. App'x at 838.  Because
Schultz, like Hadley and Walker, was not resisting arrest
and because he, like Hadley and Walker, posed no danger
to the officers, Yohn was "not entitled to use any force
at that time."  <u>Hadley</u>, 526 F.3d at 1330.  Therefore,
like the single punch in <u>Hadley</u> and the single strike
with a gun in <u>Walker</u>, the single strike with the shotgun
in this case would constitute excessive force in
violation of the Fourth Amendment.

One additional issue must also be resolved.  To state
a claim under § 1983 (the vehicle for a Fourth Amendment
claim), a plaintiff must show that the defendant acted
under color of state law.  <u>Bingham v. Thomas</u>, 654 F.3d
1171, 1175 (11th Cir. 2011).  Citing no cases, the city
argues that Griffin's behavior cannot constitute state
action because he is merely a city councillor and not a
law-enforcement officer.  The court is not persuaded.

Even assuming that Griffin would not be considered a
state actor despite his position on the city council and

13

the role that city councillors play in Brundidge law enforcement, his participation in a joint police endeavor is sufficient to meet the state-action requirement in this case.  The Supreme Court has explained: "[T]o act 'under color of' state law for § 1983 purposes[, it is enough that [the defendant] is a willful participant in joint action with the State or its agents.  Private persons, jointly engaged with state officials in the challenged action, are acting 'under color' of law for purposes of § 1983 actions."  <u>Dennis v. Sparks</u>, 449 U.S. 24, 27-28 (1980); <u>see</u> <u>also</u> <u>Harvey v. Harvey</u>, 949 F.2d 1127, 1133 (11th Cir. 1992).

Schultz alleges precisely the kind of coordinated behavior identified in <u>Dennis</u>.  According to the complaint, Yohn and Griffin worked together during the encounter.  In fact, Griffin is alleged to have both assisted in seizing Schultz and to have directed Yohn's actions at the scene.  Specifically, Griffin is alleged to have trained his shotgun on the handcuffed Schultz,

14

informed Yohn that he "had" Schultz covered, and instructed Yohn to "go get" the female passenger in Schultz's vehicle and transfer her to a police cruiser. Compl. (Doc. No. 1) at ¶¶ 11-12.   In effect, Schultz alleges that Griffin was, for all material purposes, acting as an authorized police officer during the incident and that he coordinated his efforts with Yohn, who is unquestionably a state actor.   These are sufficient allegations to withstand a motion to dismiss on a state-action ground.

Moreover, Schultz alleges that the City of Brundidge had a policy authorizing city councillors to direct law-enforcement officers and therefore that Griffin acted under municipal authority in carrying out those duties at the scene of Schultz's arrest.   That allegation would provide an independent reason to find state action in this case.

15

## B.  Claim-by-Claim Analysis

As stated, the City of Brundidge and Officer Yohn have moved to dismiss four of the five counts alleged in Schultz's complaint.  They are discussed in turn below.

### 1.  Count One: Unlawful Seizure

In count one, Schultz claims that both Yohn and Griffin are liable for the allegedly unlawful seizure. Yohn has moved to dismiss this count on the qualified-immunity ground.

Qualified immunity protects a defendant government official from the chilling effect that might accompany personal liability for carrying out discretionary duties, McCullough v. Antolini, 559 F.3d 1201, 1205 (11th Cir. 2009), by affording him immunity from suit, "unless the law preexisting the ... supposedly wrongful act was already established to such a high degree that every objectively reasonable official standing in the defendant's place would be on notice that what the

16

defendant official was doing would be clearly unlawful given the circumstances," <u>Pace v. Capobianco</u>, 283 F.3d 1275, 1282 (11th Cir. 2002).   Where, as here, the defendant officer was acting within the scope of his discretionary authority, the plaintiff must "establish that the officer violated [his] constitutional right[ and then] must also show that the right involved was 'clearly established' at the time of the putative misconduct." <u>Terrell v. Smith</u>, ___ F.3d ___, ___, 2012 WL 255327, at *3 (11th Cir. 2012) (citing <u>Pearson v. Callahan</u>, 555 U.S. 223, 232 (2009)).

As explained above, Schultz has sufficiently alleged a constitutional violation, and therefore the only question is whether his right was clearly established at the time of the incident.   This is fundamentally a question of fair notice: If the law does not make the officer aware that his "conduct would be clearly unlawful," then he is protected by qualified immunity, <u>Saucier v. Katz</u>, 533 U.S. 194, 202 (2001); however, if

the plaintiff can show that "a materially similar case has already been decided" in his favor, then fair notice exists and qualified immunity does not attach.  <u>Mercado v. City of Orlando</u>, 407 F.3d 1152, 1159 (11th Cir. 2005).

The Supreme Court's decision in <u>United States v. Brignoni-Ponce</u>, 422 U.S. 873 (1975), is such a case. There, police officers seeking to identify and arrest illegal immigrants stopped a vehicle and questioned its occupants.  <u>Id</u>. at 876.  The officers justified the stop based solely on the occupants' apparent Mexican ancestry. <u>Id</u>.  In considering the constitutionality of the stop, the Court reasoned that, despite the "legitimate needs of law enforcement" and "[f]or the same reasons that the Fourth Amendment forbids stopping vehicles at random to inquire if they are carrying aliens who are illegally in the country," it also forbids stopping or detaining persons for questioning about their citizenship on less than a reasonable suspicion that they may be aliens." <u>Id</u>. at 882-84.  Put another way, <u>Brignoni-Ponce</u> holds

that the police need some legitimate justification for a
traffic stop.  See Delaware v. Prouse, 440 U.S. 648, 655,
663 (1979) (relying heavily on Brignoni-Ponce for its
holding that "except in those situations in which there
is at least articulable and reasonable suspicion that a
motorist is unlicensed or that an automobile is not
registered, or that either the vehicle or an occupant is
otherwise subject to seizure for violation of law,
stopping an automobile and detaining the driver in order
to check his driver's license and the registration of the
automobile are unreasonable under the Fourth Amendment").[4]

Therefore, at the time of this incident, the Supreme
Court had clearly established that, at a minimum,
individualized suspicion is required for a vehicle stop.

---

4.  See also, e.g., Brendlin v. California, 551 U.S.
249, 254 n.2 (2007) ("California conceded that the police
officers lacked reasonable suspicion to justify the
traffic stop."); Illinois v. Caballes, 543 U.S. 405, 407
(2005) (traffic stop lawful when based on probable
cause); City of Indianapolis v. Edmond, 531 U.S. 32, 44
(2000) (absent special circumstances, "individualized
suspicion" required for traffic stops).

19

The complaint here reveals no individualized suspicion on Yohn's part and no evidence justifying the further restraint on Schultz's freedom that occurred when he was removed from the vehicle, handcuffed, and detained at gunpoint.  Yohn is therefore not entitled to qualified immunity at this stage in the litigation.

For his part, Yohn cites to four Eleventh Circuit cases that he argues justify his actions.  Those cases are inapposite.  In Jackson v. Sauls, 206 F.3d 1156, 1166 (11th Cir. 2000), the court found that, if the officers had drawn their guns and ordered the plaintiffs to the ground, then they could be liable under § 1983 for an unlawful seizure.[5]  It therefore supports Schultz's claim, rather than undermines it.

---

5.  Perhaps Yohn is citing this case for the principle that, during a legal investigatory stop, the mere act of drawing a weapon does not constitute excessive force.  Jackson, 206 F.3d at 1171-72.  But, as discussed above, the complaint sufficiently alleges an illegal stop and Schultz submits that he was actually beaten.  Jackson is therefore easily distinguished.

The other three cases all dealt with stops predicated on individualized suspicion.  In <u>Courson v. McMillian</u>, the court found that a passenger had not been unconstitutionally detained after the police pulled over the vehicle she was riding in.  939 F.2d 1479, 1492-93 (11th Cir. 1991).  However, in that case (and unlike in this case), there were ample grounds to justify both the traffic stop, <u>id</u>. at 1492 (The plaintiff "and her male companions, traveling at excessive speed in a no passing zone late at night, passed [the officer] in a vehicle that was similar to one that he had noticed earlier in the evening in the vicinity of cultivated marijuana fields that he was watching.  The vehicle did not respond initially to his siren and flashing blue light."), and the brief detention.  <u>Id</u>. (Because the officer conducting the investigatory stop was alone and the suspects had been "verbally abusive" and "walked toward [him]," the officer was justified, given the real concern for his own safety, in detaining all of the vehicle's passengers

21

until back up arrived.).  Moreover, unlike Schultz, the
plaintiff was neither handcuffed nor "touched physically"
once her vehicle was stopped.  <u>Id</u>.  Similarly, in <u>United
States v. Pantoja-Soto</u>, the initial stop was predicated
on reasonable suspicion and the officers were justified
in drawing their weapons because they had been "advised
that the occupants of the vehicle to be stopped could be
armed and dangerous."  768 F.2d 1235, 1236-37 (11th Cir.
1985).  Finally, the stop in <u>United States v. Roper</u> was
also based on reasonable suspicion, since the officer had
recently seen a wanted poster depicting the plaintiff and
his vehicle.  702 F.2d 984, 985 (11th Cir. 1983).  Unlike
in  <u>Courson</u>, <u>Pantoja-Soto</u>, and <u>Roper</u>, the initial stop in
this case appears to have been unjustified, and therefore
those cases provide no support for Yohn's qualified-
immunity defense.

    Put simply, the Supreme Court precedent is clear and
unambiguous:  Police must have some individualized
suspicion before they may pull over a vehicle and conduct

an investigatory stop.  Thus far, there is no evidence of
individualized suspicion, and it would therefore be
inappropriate to dismiss count one of Schultz's complaint
on a qualified-immunity ground.


          2.  Count Three: Failure to
       Prevent Griffin's Use of Excessive Force

     Count three charges that Officer Yohn failed to
prevent City Councillor Griffin's unconstitutional use of
force against Schultz.  "[A]n officer who is present at
the scene and who fails to take reasonable steps to
protect the victim of another officer's use of excessive
force, can be held liable for his nonfeasance."
Velazquez v. City of Hialeah, 484 F.3d 1340, 1341 (11th
Cir. 2007) (internal quotation marks omitted).  However,
in cases such as this one, where the allegations of
excessive force are limited to a single blow, the
plaintiff must show that the defendant officer "could
have anticipated and then stopped" the other officer from
striking the plaintiff.  Hadley, 526 F.3d at 1331; Riley

v. Newton, 94 F.3d 632, 635 (11th Cir. 1996).  Yohn is
entitled to the dismissal of this count because Schultz
fails to allege facts tending to show that Yohn could
have anticipated and prevented Griffin's conduct.

Schultz's complaint alleges only that Yohn could have
prevented the use of excessive force by ordering Griffin
not to interfere with the situation.  But nothing in the
complaint indicates that Yohn should have suspected that
Griffin might behave inappropriately:  There are no
allegations that Griffin had previously used excessive
force in Yohn's presence or that Griffin had in anyway
made Yohn aware that he planned to hit Schultz with his
shotgun.  That omission is particularly striking in light
of Schultz's allegation that Griffin had previously
inserted himself in law-enforcement activity, as it
implies that Griffin had done so without incident.
Moreover, since Griffin is alleged to have struck Schultz
only once, this is a not a case where the defendant's
inaction enabled an assault to continue.  Under these

circumstances, Schultz alleges no more than that Yohn
"did nothing to stop" the assault, and that allegation is
insufficient to make Yohn liable for Griffin's actions.
<u>Hadley</u>, 526 F.3d at 1330-31.


3.   Claims Against the City

Section 1983 provides a remedy against "any person"
who, under color of state law, deprives another of his
constitutionally protected rights.  42 U.S.C. § 1983.  In
<u>Monell v. Department of Social Services</u>, the Supreme
Court held that municipalities and other local government
entities are included among those persons to whom § 1983
applies.  436 U.S. 658, 690 (1978).  Nevertheless, for a
municipality to be liable for the actions of one of its
officers, that officer must have acted "pursuant to
official municipal policy of some nature" and that policy
must have "caused [the] constitutional tort."   <u>Id</u>. at
691.

25

The Eleventh Circuit has distilled <u>Monell</u>'s holding into three parts: "to impose § 1983 liability on a municipality, a plaintiff must show: (1) that his constitutional rights were violated; (2) that the municipality had a custom or policy that constituted deliberate indifference to that constitutional right; and (3) that the policy or custom caused the violation." <u>McDowell v. Brown</u>, 392 F.3d 1283, 1289 (11th Cir. 2004). Since this court has already concluded that Schultz's complaint sufficiently alleges that his Fourth Amendment rights were violated, only the second and third elements are at issue here.  Each will be addressed as applied to the two claims against the City of Brundidge.

<u>Count Four: The City's Policy of Permitting City Councillors to Direct Law-Enforcement Officers</u>:  Schultz alleges that the City of Brundidge had a policy of allowing Griffin to direct law-enforcement officers.  He further asserts that Griffin had previously acted under that authority, meaning that this was not an isolated

incident, but rather an example of a broader course of conduct that the city knew of and authorized.  But for this policy, Schultz submits, Griffin could not have participated in the encounter and would have therefore been unable to violate the Constitution.  While that sufficiently alleges that the city had a policy that caused the deprivation of Schultz's constitutional rights, it fails to show the requisite "deliberate indifference" necessary for municipal liability under § 1983.

The Supreme Court has explained that a municipality's "continued adherence to an approach that [it] knew or should [have known] has failed to prevent tortious conduct by employees may establish the conscious disregard for the consequence of their action--the 'deliberate indifference'--necessary to trigger municipal liability." Bd. of County Comm'rs v. Brown, 520 U.S. 397, 407 (1997).  But in this case, Schultz does not allege that Griffin, or any other City Councillor, had

previously committed a constitutional violation as a
result of this policy.  Absent any allegation "that city
officials were aware of past police misconduct," Brooks
v. Scheib, 813 F.2d 1191, 1193 (11th Cir. 1987), or that
the natural consequences of this policy would be
constitutional violations, see Anderson v. City of
Atlanta, 778 F.2d 678, 685-86 (11th Cir. 1985), the jury
could not reasonably find that the city acted with
deliberate indifference.  Count four should therefore be
dismissed.

Count Five: The City's Failure to Train:  It is one
thing to permit city councillors to participate in a
police action and quite another to do so without
providing adequate training.  Indeed, that distinction is
why Schultz's policy claim in count four must be
dismissed, while his failure-to-train claim in count five
can proceed.

"A municipality can ... be held liable under § 1983
when its employees cause a constitutional injury as a

result of the municipality's policy- or custom-based
failure to adequately train or supervise its employees."
Am. Fed'n of Labor & Cong. of Indus. Orgs. v. City of
Miami, 637 F.3d 1178, 1188 (11th Cir. 2011).  One way for
liability to attach is if "the need for more or different
training is so obvious, and the inadequacy so likely to
result in the violation of constitutional rights, that
the policy makers of the city can reasonably be said to
have been deliberately indifferent to the need."  Riley
v. Newton, 94 F.3d 632, 638 (11th Cir. 1996).  Schultz's
complaint sufficiently alleges that this is such a case.

Schultz submits that the City of Brundidge had a
policy of permitting untrained civilians to act as and to
give orders to police officers.  Just as there is an
obvious need to train police officers in the basic
contours of the Constitution, lest they act in ways that
violate it, there is also a need either to train
civilians participating in police actions in how to
behave or to train the police in how to manage those

29

civilians properly during encounters with suspects. According to Schultz, no such training took place. If the city had a policy of permitting untrained, yet heavily armed, civilians to conduct police work and did nothing to prepare its law-enforcement officers to maintain order during police actions in which those civilians participated, then a reasonable jury could find it liable for the foreseeable constitutional violations that result.

***

For the forgoing reasons, it is ORDERED that:

(1) Defendant City of Brundidge's motion to dismiss (doc. no. 9) and defendant Ronald Yohn's motion to dismiss (doc. no. 22) are granted to the extent that plaintiff Alfred F. Schultz's third claim (defendant Yohn failed to prevent defendant Arthur Lee Griffin's use of excessive force) and his fourth claim (defendant City of

Brundidge had an illegal policy of permitting city councillors to direct law-enforcement officers) are dismissed.

(2) Said motions are denied as to plaintiff Schultz's first claim (defendants Yohn and Griffin conducted an unlawful seizure) and his fifth claim (defendant City of Brundidge failed to train). Plaintiff's Schultz's second claim (defendant Griffin used excessive force) is not the subject of the motions. This case will therefore proceed as to these three claims.

DONE, this the 5th day of March, 2012.

      /s/ Myron H. Thompson      
    UNITED STATES DISTRICT JUDGE